FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

2009 MAY -8  P 12: 41

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal No. WDQ-08-0415 |
| | ) | |
| LARRY CHEESE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH
## SUBPOENAS DUCES TECUM

The Baltimore Police Department (the "BPD"), through undersigned counsel and pursuant to Fed. R. Crim. P. 17 (c)(2), respectfully submits the following Memorandum in Support of its Motion to Quash Defendant's subpoenas duces tecum. For the reasons set forth below, Defendant's subpoenas duces tecum should be quashed and the BPD should not be required to produce the requested files to Defendant.

### I.       INTRODUCTION

Defendant has issued two subpoenas duces tecum (attached hereto as Exhibits 1 and 2) to the Custodian of Records of the BPD. The first subpoena commands the production of confidential Internal Investigation Division ("IID") files of Detective Todd Moody ("Detective Moody") and Officer Mark Williams ("Officer Williams").[1] The second subpoena, also directed

---

[1] Defendant's subpoena is improperly issued to the Custodian of Records for the Baltimore Police Department. The Internal Investigation Division maintains the records sought by Defendant.

to the BPD requests "any and all records, reports, notes, complaints, arrest records, incident reports, warrants" for the Defendant.[2]

The officers identified in Exhibit 1 are expected to testify on behalf of the prosecution at Defendant's trial.  Defendant, however, is attempting to obtain these confidential materials by circumventing the applicable federal rules of discovery, and he has failed to articulate a genuine need for Detective Moody and Officer Williams' IID files.

With respect to Exhibit 2, the subpoena is overly broad and vague, and compliance would be unreasonable and oppressive.  Accordingly, this Court should quash Defendant's subpoenas duces tecum and prohibit the production and/or use of the requested records.

## II.   **LEGAL ARGUMENT**

### A.   **The Court Should Preclude Defendant from Circumventing the Applicable Federal Rules of Discovery.**

The United States Government has the duty to produce, at the request of the defendant, books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are either (1) material to the preparation of the defendant's defense, (2) intended for use by the government as evidence in chief at the trial, or (3) were obtained from or belong to the defendant.  *See* Fed. R. Crim. P. 16(a)(1)(E).  This obligation extends to exculpatory information, including, but not limited to, information relating to the credibility of government witnesses.  *See generally Giglio v. United States*, 405 U.S. 150 (1972).  The duty to produce such materials lies with the prosecutor and not the BPD.  *See Giglio,* 405 U.S. at 154 (satisfying *Brady* "is the responsibility of the prosecutor"); *See also Jean v. Collins*, 221 F.3d 656, 660 (4th

---

[2] Defendant's subpoena is improperly issued to the Custodian of Records for the Baltimore Police Department.  The Central Records Division maintains the records sought by Defendant.

Cir. 2000) ("[T]o speak of the duty binding police officers as a *Brady* duty is simply incorrect. The Supreme Court has always defined the *Brady* duty as one that rests with the prosecution.").

In the present case, there is no indication or claim from Defendant that the United States Attorney's Office has failed to fulfill its obligation to disclose exculpatory materials under *Brady/Giglio*. Absent such a showing, the Defendant is not entitled to make an end run around the discovery rules by subpoenaing materials directly from the BPD. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.").

Accordingly, the Court should quash Defendant's subpoena duces tecum for IID and personnel files and prohibit the production and/or use of the requested records.

**B.      Defendant has Failed to Demonstrate a Genuine Need for Detective Moody and Officer Williams' Confidential IID Records, and the Court Should Therefore Quash Defendant's Subpoena Duces Tecum.**

Even if the Court decides that Defendant's subpoena duces tecum was procedurally proper under the applicable federal rules, he has still failed to proffer or demonstrate a genuine need for the requested materials, and therefore is not entitled to their production.

**1.      Maryland law restricts the disclosure of IID records.**

The Maryland Public Information Act ("MPIA") restricts the disclosure of certain public records. A "public record" is defined by the MPIA as "the original or any copy of any documentary material that: (i) is made by a unit or instrumentality of the State government or of

a political subdivision." MD. CODE ANN., STATE GOV'T, § 10-611(g)(1). The Baltimore Police Department is a unit of the State government, and its records are therefore within the purview of the MPIA. *See Mayor & City Council of Baltimore v. Maryland Comm. Against the Gun Ban*, 329 Md. 78, 81, 617 A.2d 1040 (1993). In *Md. Comm. Against the Gun Ban*, the Maryland Court of Appeals specifically stated that records created by the Internal Investigation Division of the Baltimore Police Department are covered by the MPIA. *Id.* at 81, 1041.

Personnel records constitute "public records" under the MPIA, but are exempt from disclosure under MD. CODE ANN., STATE GOV'T, § 10-616. These records are made exempt from disclosure "to preserve the privacy of personal information about a public employee that is accumulated during his or her employment." 78 Op. Att'y Gen. 291, 293 (1993). While the term "personnel record" is not defined in the MPIA, the Maryland Court of Appeals has stated that § 10-616(i) "discloses what type of documents the Legislature considered to be personnel records." *Kirwan v. The Diamondback*, 352 Md. 74, 82, 721 A.2d 196, 199 (1998). "Although this list was not intended to be exhaustive, it does reflect a legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job." *Id*. at 82-83, 200. IID records, which contain complaints against officers for conduct within the scope of their employment with the BPD, certainly fall within this definition and are therefore exempt from disclosure.

Moreover, MD. CODE ANN., STATE GOV'T, § 10-618(f), protects internal investigatory materials from disclosure to the extent such materials would:

1) Interfere with a valid and proper law enforcement proceeding;

2) Deprive another person of a right to a fair trial or an impartial adjudication;

3) Constitute an unwarranted invasion of personal privacy;

4) Disclose the identity of a confidential source;

5) Disclose an investigative technique or procedure;

6) Prejudice an investigation; or

7) Endanger the life or physical safety of an individual.

Accordingly, to the extent the files sought by Defendant contain information such as social security numbers, descriptions of investigatory techniques employed by police officers, complainants, arrest records and addresses, or any other information falling under any of the other categories listed above, they are protected from disclosure pursuant to § 10-618(f).

The strong Maryland policy restricting the disclosure of IID records is underscored by the procedures employed by IID, the type of information kept in IID files, and the security measures taken by IID to maintain the confidentiality of its records, each of which is detailed in the affidavit of Major Keith Tiedemann, Chief of IID, attached hereto as Exhibit 3. IID is charged with investigating claims of misconduct, including but not limited to, police corruption, criminal behavior, and instances of insubordination, against BPD officers. (Ex. 3 ¶ 1.) A complaint can be made by simply placing a call to 311, 911, various police facilities, the Legal Aid Bureau, the Civilian Review Board, or the Community Relations Commission. (Ex. 3 ¶ 2.)   Yet, IID takes every claim made against an officer seriously. *Id.* Complaints can be investigated by IID General Complaints Section, referred to the Integrity Unit for further investigation, or referred to the officer's District Commander for appropriate action. (Ex. 3 ¶ 3.)   Upon completion of the investigation, IID may: (1) sustain the complaint; (2) find that the complaint is not sustained; (3) find that the complaint is unfounded; or (4) exonerate the accused officer. *Id.*

If a claim is sustained by IID, the facts have established, by a preponderance of the evidence, that the case should be presented to the Charging Committee. (Ex. 3 ¶ 4.) A "sustained" finding by IID is not a final disposition against the officer. *Id.*

If IID finds that a claim is "not sustained," the facts have demonstrated that there is not sufficient evidence for charges to be filed against the accused officer or that there was no violation of agency policy. (Ex. 3 ¶ 5.) Upon a finding of "not sustained," the investigation is closed, with three exceptions: excessive force, discourtesy, and harassment claims are reviewed by the Civilian Review Board regardless of IID's finding. *Id.*; PUBLIC LOCAL LAWS OF BALTIMORE CITY § 16-46. IID refers complaints to District Command when it determines that a complaint involves minor officer misconduct that is most appropriately handled by the officer's District Commander. (Ex. 3 ¶ 6.)

Regardless of IID's finding or the case's final disposition, a complaint against an officer remains in the officer's personnel file for three years from the final disposition of that complaint. (Ex. 3 ¶ 7.) At that time, the officer may request that a complaint having any disposition other than "sustained" be expunged from his or her record. *Id.* A "sustained" claim may be expunged from an officer's IID file if the final disposition of the case overturns IID's finding in the case against the officer. *Id.*

Generally, an officer's IID file contains information pertaining to internal investigations, including but not limited to: (1) the names of accused officers, complainants, witnesses and confidential informants; (2) the names of IID investigators assigned to each case; (3) narrative descriptions of the underlying events and IID investigative techniques; and (4) the names of victims and juveniles. (Ex. 3 ¶ 8.)    Because this information is highly sensitive, the information gathered by IID investigators and kept in IID files is kept in the strictest confidence. (Ex. 3 ¶ 9.)

Physical access to IID files is restricted to individuals working within IID, including Major

Tiedemann, his deputy, officers assigned to the division, and civilian support staff. (Ex. 3 ¶ 10.)

These security measures are in place because the information contained in IID files can

compromise or destroy an investigation and can, in certain instances, threaten the safety or lives

of those involved in or connected with the investigation. *Id.* The IID security procedures

outlined by Major Tiedemann are consistent with the Law Enforcement Officers' Bill of Rights,

codified in MD. CODE ANN., PUB. SAFETY, § 3-104, requiring that officers sign a confidentiality

agreement when requesting IID records and precluding the disclosure of such information for

any purpose other than to defend the officer against departmental charges.

In light of these concerns, the BPD has a duty to maintain the confidentiality of these

records and opposes any attempt, in civil or criminal cases, to obtain such records through

discovery or by the issuance of a subpoena. (Ex. 3 ¶ 11.)

## 2. This Court must balance Defendant's need for confidential IID files against the Maryland laws protecting them from disclosure.

To the extent that there exists a constitutional right to pre-trial discovery of certain

information in criminal proceedings, recognition of that right generally has been based on the

notion that the accused in a criminal proceeding is entitled to access to *exculpatory* information.

*See Ritchie*, 480 U.S. at 57-60. While Maryland courts have required the disclosure of IID

records in criminal cases and administrative proceedings, these records are not produced as a

matter of course. *See Blades v. Woods*, 107 Md. App. 178, 185, 667 A.2d 917, 921 (1995);

*Robinson v. State*, 354 Md. 287, 730 A.2d 181 (1999); *Chief of Montgomery County Police v.*

*Jacocks*, 50 Md. App. 132, 436 A.2d 930 (1981). Rather, Maryland courts must balance

Defendant's need for relevant information in these confidential records against privacy concerns

and the BPD's duty to maintain their confidentiality. *See Blades*, 107 Md. App. at 185, 667 A.2d

917, 921; *see also Ritchie*, 480 U.S. at 60 (calling for *in camera* review by trial court to balance defendant's interests in potentially exculpatory evidence with state statute protecting information from disclosure).

In Maryland, IID records are presumptively privileged even from *in camera* inspection, and the burden is on the party seeking production to make a preliminary showing that the documents may not be privileged or, in those cases where a weighing approach is appropriate, that there is some genuine necessity for production. *See Baltimore City Police Department v. State*, 158 Md. App. 274, 288, 857 A.2d 148, 156 (2004); *see also Goldsmith v. State*, 337 Md. 112, 127-28, 651 A.2d 866, 873-74 (1995) ("When…the records sought are confidential, before disclosure will be ordered, the moving party must show…some connection between the records sought, the issue before the court, and the *likelihood* that information relevant to the trial would be discovered.") (internal quotation marks omitted) (citing *Zaal v. State*, 326 Md. 54, 83, 602 A.2d 1247, 1261 (1992)) (emphasis in original).

If the requesting party fails to proffer and establish a genuine need for the confidential records, Maryland courts must direct that the records not be disclosed. *See Baltimore City Police Department*, 158 Md. App. at 288, 857 A.2d at 156. Conversely, if the requesting party meets this initial burden, Maryland courts conduct an *in camera* inspection of the files to determine what records exist and which, if any, are subject to disclosure. *See Blades*, 107 Md. App. at 186, 667 A.2d at 921. Any records reviewed by the court *in camera* and deemed not relevant or usable are sealed and filed separately. *See id.*

    **3.**      **Defendant has not met his burden and the Court should prohibit disclosure of the requested materials.**

In the present case, Defendant has not made even a cursory showing that he has a genuine need for the IID records of Detective Moody or Officer Williams. In fact, Defendant has made

no showing at all. Rather, Defendant simply issued a subpoena duces tecum demanding

production of the files. In light of this failure to make any showing of need for the requested

records, it is clear that Defendant is engaged in a mere fishing expedition. Maryland courts

routinely prohibit such frivolous pursuits. *See Goldsmith*, 337 Md. at 156, 651 A.2d at 888 (J.

Bell dissenting) ("[The Court of Appeals] did not, however, sanction or encourage fishing

expeditions by counsel. We had required in *Zaal*, and continued to require in *Stein*, that counsel

must proffer a reasonable possibility that review of the records would result in discovery of

useable evidence. Although the defendant need not show that the records actually contain

material information, the proffer cannot be merely a desperate grasping at a straw.") (internal

citation and quotation marks omitted); *see also Fisher v. State*, 128 Md. App. 79, 121, 736 A.2d

1125, 1147 (1999) ("[A] mere assertion that the credibility of a witness is an issue and that

'some latitude' is necessary in looking for impeaching material is not enough to cross the

threshold [to trigger an *in camera* review by the court]."). Similarly, the Supreme Court has held

that a defendant seeking discovery of confidential materials may not require the trial court to

conduct an *in camera* review "without first establishing a basis for his claim that [the requested

records] contain material evidence." *Ritchie*, 480 U.S. at 58, n. 15. (citing *United States v.*

*Valenzuela-Bernal,* 458 U.S. 858, 867 (1982). Accordingly, this Court should quash

Defendant's subpoena duces tecum.

## C.    Defendant's Subpoena Subjects the BPD to Annoyance, Oppression, and Undue Burden and Expense.

With respect to Exhibit 2, the Defendant has made a sweeping request for any and all

records related to all of Defendant's <u>past</u> encounters with the BPD. Pretrial discovery is limited

to documents that are relevant, specifically designated and admissible. *U.S. v. Lang*, 766 F.

Supp. 389 (D.Md. 1991). Defendant's use of the phrase "any and all records" in his second

subpoena bolsters the BPD's assertion that the Defendant is engaged in a fishing expedition for documents that are unrelated to his current case.  Defendant has not even alleged that the documents sought are relevant, have any evidentiary value, and are necessary for his trial preparation.  *U.S. v. Myerson*, 684 F.Supp. 41 (S.D.N.Y. 1988).  In the absence of such a showing, Defendant's second subpoena duces tecum should be quashed as well.

Finally, it must be noted that the mere issuance of these subpoenas duces tecum subjects the BPD to annoyance, oppression, and undue burden and expense.  The Defendant has completely disregarded the applicable federal rules and procedures governing pre-trial discovery of tangible evidence.  In light of this fact, and the complete lack of legal or factual support for the records requested in the subpoenas, it is clear that counsel for Defendant is without grounds to support their issuance.   If the BPD were required to respond to an unsupported subpoena for tangible evidence every time a BPD officer was expected to testify at a criminal trial or every time a defendant wanted to review his past contacts with the BPD, its Office of Legal Affairs would have little time to do anything else.  Accordingly, the BPD requests that this Court quash Defendant's subpoenas duces tecum without requiring the BPD to appear for a hearing.

## III.   CONCLUSION

For each of the reasons set forth above, the BPD respectfully requests that this Honorable Court quash Defendant's subpoenas duces tecum and prohibit the production and/or use of the requested records.

Respectfully submitted,

*Valerie Thompson*

Valerie A. Thompson
Bar No. 28934
Associate Legal Counsel
Baltimore Police Department
242 W. 29th Street
Baltimore, Maryland 21211
Telephone: (410) 396-2496

Attorney for the BPD


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this ___8th___ day of May, 2009, a copy of the foregoing

Memorandum in Support of Motion to Quash Subpoenas Duces Tecum was mailed, first-class,

postage prepaid, to:

Michael R. Carithers, Esq.
111 South Calvert Street, Suite 2700
Baltimore, Maryland 21202

Christopher Mason, Esq.
Assistant United States Attorney
Office of the United States Attorney
36 South Charles Street
Baltimore, Maryland 21201

James Wallner, Esq.
Assistant United States Attorney
Office of the United States Attorney
36 South Charles Street
Baltimore, Maryland 21201

*Valerie Thompson*

Valerie A. Thompson
Bar No. 28934