**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | * |
| | *   **Criminal No.: WDQ-08-0415** |
| **LARRY CHEESE** | * |
| | * |

...oOo...

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, James T. Wallner, Assistant United States Attorney for said District and Christopher Mason, Special Assistant United States Attorney for said District, submits this Opposition to Defendant's Motion to Suppress.

**I. INTRODUCTION**

The defendant is charged in a one count indictment with conspiracy to distribute and possess with the intent to distribute fifty (50) grams or more of cocaine base and one (1) kilogram or more of heroin in violation of 21 U.S.C. § 846. During its case in chief, the Government will seek to introduce evidence that was seized when the defendant was arrested on April 13, 2006 and November 29, 2006, as well as recorded conversations that the defendant had while he was incarcerated.[1] While the Government concedes the evidence recovered on April 13, 2006 and November 29, 2006, was seized without a warrant, the Government contends that it is admissible pursuant to one of the well-established exceptions to the warrant requirement of the Fourth

---

[1] The Government will undoubtedly be introducing much more evidence throughout the trial, however, the evidence seized on these two dates, as well as the recorded jail conversations, are directly attributable to the defendant. Therefore, the Government will specifically address the constitutionality of the seizures that occurred on these two specific dates and the propriety of introducing the recorded jail conversations of the defendant.

Amendment to the United States Constitution. Additionally, the recovery of the recorded jail conversations of the defendant was not in violation of the Fifth or Sixth Amendment to the United States Constitution. Based on the foregoing, the defendant's Motion to Suppress should be denied.

## II. STATEMENT OF FACTS

### A. April 13, 2006 incident

On April 13, 2006, at approximately 8:00 a.m., a Baltimore Police Department ("BPD") detective was conducting covert surveillance of 2121 Sidney Avenue in Baltimore, Maryland. During the course of this surveillance, the detective observed the defendant meeting with Samuel Shellington ("Shellington") in front of 2121 Sidney. The detective then observed the defendant enter 2121 Sidney using a key. A few moments later, the detective observed the defendant exit the front door of 2121 Sidney and throw a plastic bag containing numerous gel caps of suspected heroin onto the front porch of 2123 Sidney. Shellington retrieved the bag and proceeded to the mouth of the alley leading to the rear odd side of the 2200 block of Annapolis Rd. where the detective observed Shellington exchange these gel caps of heroin for U.S. currency with unknown individuals. When Shellington was finished distributing the gel caps of heroin he met with the defendant and handed him the currency he had just collected from the unknown individuals. Both Shellington and the defendant then walked back to 2121 Sidney at which time the defendant went back into the house and Shellington waited on the corner. A few moments later the defendant exited 2121 Sidney and threw another plastic bag containing gel caps of suspected heroin onto the porch of 2123 Sidney. Shellington retrieved the bag once again and headed towards the same alley. The detective conducting the covert surveillance contacted his arrest team at that time. As the arrest team approached the location Shellington observed their presence and fled. He was eventually

apprehended after a short foot pursuit, however, the bag he was observed retrieving from 2123 Sidney could not be located. During the foot pursuit with Shellington, the defendant exited 2121 Sidney and also attempted to flee from the location. He was also apprehended after a brief foot pursuit.

The detective conducting covert surveillance then contacted the renter of 2121 Sidney, Rosa Knox, who is the mother of the defendant. Ms. Knox informed the detective that she had moved from 2121 Sidney a few weeks ago and that the house should be vacant with the exception of a few small items she still needed to retrieve from the location. She also stated the her son, the defendant, did not live at 2121 Sidney. Ms. Knox responded to the location and gave written consent for law enforcement to search the location. Using a key recovered from the defendant law enforcement searched the inside of 2121 Sidney. While nothing was recovered from inside the residence, a plastic bag containing 50 gel caps of heroin was recovered from within a pile of trash in the rear yard. Shellington and the defendant were released pending results of the lab analysis.

**B. November 29, 2006 incident**

On November 29, 2006, at approximately 12:00 p.m., a BPD officer was in a covert location observing the 2200 block of Cedley St. when his attention was drawn to the defendant and Antonio Hart ("Hart") who were speaking with one another as they walked up and down the block. The officer then observed Sharon Seward ("Seward") approach Hart and the defendant. Seward handed the defendant U.S. currency at which time the defendant nodded his head towards Hart. Hart then responded to a grassy patch next to a curb and retrieved a white plastic bag from which he removed a plastic bag containing several small items. Hart removed one of the small items from the plastic bag and placed the bag back in the grass. Hart then responded directly back to Seward and handed

her the smell item he had removed from the bag. An arrest team was contacted and as they approached Seward she dropped a ziplock bag containing suspected cocaine from her left hand. Seward was arrested. The arrest team then responded to the grassy patch where Hart was observed retrieving the item he handed to Seward. Recovered from this location was a white plastic bag that contained a plastic bag that contained forty-four (44) ziplock bags containing suspected cocaine. These ziplock bags were identical to the one dropped to the ground by Seward. Hart and the defendant were arrested. A search incident to the arrest of Hart revealed $16 and a search incident to the arrest of the defendant revealed $152.

**C. Recorded jail conversations**

Pursuant to a subpoena issued by the Grand Jury for the United States District Court for the District of Maryland to the Baltimore City Detention Center ("BCDC") and the Maryland Department of Corrections ("DOC") call made by the defendant from either BCDC or a correctional facility under control of the DOC were recorded and later supplied to law enforcement personnel. These calls were from the period of March 20, 2008 to March 26, 2008, and September 19, 2008 to May 5, 2009. Prior to the beginning of each call, a recording states that each "call is subject to monitoring and recording."

### III.  ARGUMENT

**A. April 13, 2006 incident**

> **1.   The Fourth Amendment is not implicated in the search of 2121 Sidney Avenue as the Defendant does not have standing to challenge the seizure of evidence from a vacant house[2] or its curtilage.[3]**

In order for individuals to invoke the protections afforded them by the Fourth Amendment to the United States Constitution, they must demonstrate that they have a "legitimate expectation of privacy" in the places or objects searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). To establish the legitimacy of this privacy interest, the person must not only exhibit "an actual (subjective) expectation of privacy in the item or place searched," *Katz v. United States*, 389 U.S. 347, 353 (1967), but must also prove that "society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 40 (1988). Accordingly, defendants cannot assert a reasonable expectation of privacy in a vacant dwelling. *See Jackson v. United States*, 585 F. 2d 653, 658 (4th Cir. 1978)(holding that when a defendant places an object in a vacant house in which he has neither a proprietary nor a possessory interest, he has no more expectation of privacy than if he had placed the object in a public place).

In the instant case, the defendant's mother, Rosa Knox, told the officers that she had moved from 2121 Sidney a few weeks ago and that, besides a few small items she still needed to retrieve from the location, the house should be vacant. Additionally, while the Government concedes that

---

[2] A search of the Maryland Department of Assessments and Taxation web site listed the owner of 2121 Sidney Avenue on April 13, 2006, as Salesforces Solutions, LLC.

[3] The Government does not concede that the area from which the 50 gel caps of heroin was seized in the backyard is considered the curtilage of 2121 Sidney Avenue.

the defendant used a key[4] to enter 2121 Sidney, that fact alone does not confer automatic standing on the defendant. The defendant must still show that he has a proprietary or a possessory interest in the house and that he has the *right* to exclude others from the premises not just the ability. In this case the defendant has no such right. Not only did the defendant's mother state that her son did not live at 2121 Sidney but the defendant himself stated that his home address was 108 N. Fremont Avenue when he was detained for this incident.

  **2.**   **If the defendant does have standing to challenge the search of 2121 Sidney Avenue, the fact that Rosa Knox gave law enforcement consent to search the premises makes the search reasonable under the Fourth Amendment.**

The Fourth Amendment to the United States Constitution requires that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const. Amend. IV.* However, there are several well-recognized exceptions to the warrant requirement of the Fourth Amendment. One such exception is when a search is conducted pursuant to valid consent. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). For consent to be valid, the motions court must determine that it was given knowingly and voluntarily based upon the totality of the circumstances. *United Stated v. Mendenhall,* 446 U.S. 544 (1980). In determining whether free and voluntary consent to search was in fact given, courts should consider the characteristics of the consenting person (including age, maturity, education, intelligence and experience) coupled with the circumstances surrounding the giving of the consent (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). *United States v. Elie,* 111

---

[4] This same key was recovered from the defendant pursuant to a search incident to arrest.

F.3d 1135, 1144 (4th Cir. 1997). Finally, while individuals can lawfully consent either orally or in writing, "*written* consent supports a finding that consent was voluntary." *United States v. Boone,* 245 F.3d 352, 362 (4th Cir.), *cert. denied,* 532 U.S. 1031 (2001) (emphasis added).

In the case at bar, the defendant's mother, Rosa Knox, gave the officers written consent to search 2121 Sidney Avenue (Exhibit #1). This consent was freely and voluntarily given as is evidenced by the fact that Ms. Knox herself wrote and signed the statement that granted consent to the officers to search 2121 Sidney. Moreover, Ms. Knox had the authority, either express or apparent, to consent to the search of 2121 Sidney based on the conversation she had with the officers about who previously lived in the house and who currently resided there.

**B. November 29, 2006 incident**

    **1.    The defendant does not have standing to challenge the seizure of the ziplock bag of cocaine from Seward or the seizure of the forty-four (44) ziplock bags of cocaine from the grassy patch next to a curb.**

In order for individuals to invoke the protections afforded them by the Fourth Amendment to the United States Constitution, they must demonstrate that they have a "legitimate expectation of privacy" in the places or objects searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). To establish the legitimacy of this privacy interest, the person must not only exhibit "an actual (subjective) expectation of privacy in the item or place searched," *Katz v. United States*, 389 U.S. 347, 353 (1967), but must also prove that "society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 40 (1988). Moreover, "Fourth Amendment rights...are personal rights," which co-defendants "lack standing to assert vicariously." *United States v. Taylor,* 857 F.2d 210, 214 (4th Cir. 1988). The Fourth Circuit has failed to recognize the "coconspirator exception" to this general rule holding in *United States v. Al-Talib,* 55 F.3d 923,

that "[n]o expectation of privacy is created simply because one has a supervisory role in the conspiracy or joint control over the place or property involved in the search or seizure. *Id.* at 930.

Based on the law as set forth above, the defendant does not have standing to challenge the seizure of either the one (1) ziplock of cocaine from Seward or the forty-four (44) ziplocks of cocaine from the grassy patch near a curb. It is the Government's contention that the defendant's assertion of Seward's expectation of privacy is not one that society is ready to accept as objectively reasonable. Moreover, the defendant cannot legitimately claim an expectation of privacy in a grassy patch next to a curb on a public street that anyone and everyone has access to.

> **2. The officers had reasonable, articulable suspicion to initially detain the defendant which escalated into probable cause to arrest once the cocaine was recovered from Seward and the grassy patch. This probable cause to arrest justified the search of the defendant and the seizure of the $152 from him.**

When taking into consideration the totality of the circumstances, if an officer has reasonable, articulable suspicion that criminal activity is afoot that officer may stop and briefly detain a person for investigative purposes. *United States v. Sokolow,* 490 U.S. 1, 7 (1989); *Terry v. Ohio,* 392 U.S. 1, 30 (1968). This "reasonable suspicion" standard should take into consideration not only information known to the officer, but also any reasonable inferences to be drawn from that information based on the officer's experience and specialized training. *United States v. Arvizu,* 544 U.S. 266, 273 (2002). However, reasonable suspicion cannot be established based on the "mere hunch" of an officer or on an uncorroborated anonymous tip. *Id.* at 274.

If an officer has probable cause to believe based upon the totality of the circumstances that a felony is being or has been committed by an individual then that officer may effectuate a warrantless arrest of that person. *Illinois v. Gates,* 462 U.S. 213, 230-31 (1983). Moreover, an officer is permitted to arrest an individual without a warrant if that person has committed a

misdemeanor in the arresting officer's presence. *Maryland v. Pringle,* 540 U.S. 318, 354 (2001). In order to effectuate this arrest, there must be "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck,* 744 F.2d 360, 376 (4th Cir. 1984). Following this lawful arrest, an officer then has the right to search the individual, as a search incident to arrest is a well established exception to the warrant requirement of the Fourth Amendment. *Michigan v. DeFillippo,* 443 U.S. 31, 35 (1979).

In this case, the defendant was observed accepting U.S. currency from Seward who he then directed to Antonio Hart. Hart then sold Seward a small item that appeared to be a ziplock of cocaine. Based on these observations, along with the reasonable inferences that can be drawn from them, the Government contends that the detectives had, at a minimum, reasonable, articulable suspicion to conduct a *Terry* stop of the Defendant at that time. Once the officers confirmed that what Hart had sold Seward was in fact a ziplock of suspected cocaine and that the plastic bag in the grassy patch contained an additional 44 ziplock of suspected cocaine, the reasonable, articulable suspicion the officers had to conduct a *Terry* stop of the defendant escalated into probable cause for his arrest. As detectives now had a lawful basis to arrest the defendant without a warrant, they also could legally search the defendant incident to that arrest.

**C. Recorded jail conversations**

1. **All jail calls made by the defendant were obtained pursuant to grand jury subpoenas and were not seized in violation of the defendant's Fifth or Sixth Amendment rights.**

*Miranda* warnings are required when a subject is interrogated while in custody. *Miranda v. Arizona,* 384 U.S. 436 (1966). However, custodial statements volunteered by a defendant are not implicated by *Miranda.* "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility [is not subject to the mandates of *Miranda]*."

In this case, the defendant's statements were clearly volunteered as he was the one making the phone calls. There was no interrogation by law enforcement personnel or anyone working on behalf of law enforcement. Finally, the defendant knew that his calls were being monitored as each call began with a recording that stated, "this call is subject to monitoring and recording."

## IV. CONCLUSION

For all of the foregoing reasons, and any others that the Government may seek to raise during the hearing on the motion, the Defendant's Motion to Suppress should be denied.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

Date:   May 26, 2009            By:            /s/
                                    James T. Wallner
                                    Assistant United States Attorney

                                    Christopher Mason
                                    Special Assistant United States Attorney